IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRIGHTSTAR FRANCHISING, LLC,<br><br>   Plaintiff,<br><br>v.<br><br>FORESIDE MANAGEMENT COMPANY, MARK E. WOODSUM, and CLAIRE WOODSUM,<br><br>   Defendants. | Case No. 1:25-cv-08741<br><br>Judge Mary M. Rowland |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO COMPEL ARBITRATION**

  Plaintiff BrightStar Franchising, LLC ("BrightStar Care") submits this memorandum of law in support of its motion under Section 4 of the Federal Arbitration Act, 9 U.S.C. §1, *et seq.* (the "FAA") to compel Defendants to submit to binding arbitration the claims Defendant Foreside Management Company ("Foreside") just filed in California Superior Court. As set forth more fully below, BrightStar Care's motion should be granted because those claims—which effectively ask a California court to release Foreside from the exact same post-termination obligations BrightStar Care is seeking to enforce in this Court—must be submitted to arbitration in Illinois under Section 15.3 of the parties' Franchise Agreements.[1]

---

[1]  The FAA specifies that the proper venue for compelling arbitration is the United States District Court having jurisdiction over the contractually specified site of arbitration – which in this case is the Northern District of Illinois. 9 U.S.C. § 4.

I.  **BACKGROUND FACTS**

  A.  <u>**The Franchise Agreements and the Obligation to Arbitrate**</u>

As discussed in full in BrightStar Care's Memorandum of Law in Support of its Motion for Preliminary Injunction [Doc. # 14], on or about December 31, 2014, Foreside's principal, Defendant Mark E. Woodsum ("Mr. Woodsum"), entered into three franchise agreements with BrightStar Care (the "Tustin Franchise Agreement," the "San Juan Capistrano Franchise Agreement," and the "Lake Forest Franchise Agreement"). (True and correct copies of these Franchise Agreements are attached to this Memorandum as Exhibits 1-3, respectively.) On or about June 19, 2015, Mr. Woodsum assigned these three Franchise Agreements to his company, Foreside. Mr. Woodsum entered into a fourth Franchise Agreement with BrightStar Care on or about April 27, 2015 (the "Newport Beach Franchise Agreement"), which he also later assigned to Foreside. (A true and correct copy of the Newport Beach Franchise Agreement is attached hereto as Exhibit 4.) (Each agreement, a "Franchise Agreement"; collectively, the "Franchise Agreements.").[2]

All four Franchise Agreements contain mandatory arbitration clauses. Subject to Section 15.4 (which allows the parties to go to court for injunctive or equitable relief or to enforce an interest in real or personal property), each Franchise Agreement broadly requires the parties to arbitrate any claim related to those agreements or the parties' relations:

> **Arbitration.** If not resolved by mediation and except as qualified below, any dispute between Franchisee and Franchisor or their respective affiliates arising under, out of, in connection with or in relation to this Agreement, the parties' relationship, or Franchisee's Agency must be submitted to binding arbitration in Gurnee, Illinois (or Franchisor's then-current headquarters [now Bannockburn, Illinois]) in accordance with the Federal Arbitration Act and the Commercial Arbitration Rules of the American Arbitration Association ("AAA") then in

---

[2] Both Mr. Woodsum and his wife, Defendant Claire Woodsum ("Ms. Woodsum") personally guaranteed Foreside's obligations under the Franchise Agreements.

2

>effect. . . . The Federal Arbitration Act, as amended, will govern the rights and duties of the parties to this Agreement to resolve any disputes by arbitration.

(Franchise Agreements § 15.3.)

### B. Expiration of the Franchise Agreements and this Illinois Lawsuit

The Franchise Agreements' ten-year terms expired on July 26, 2025.[3] Before expiration, BrightStar Care repeatedly offered Foreside the opportunity to renew for an additional ten-year term, as well as the opportunity to extend for a shorter term (so it could consider whether it wanted to renew for a full term), but it declined both offers. And it did so for a simple reason: it wanted to open its own competing home healthcare agency, doing the same things it did while it was a BrightStar Care franchisee, without the obligation to pay the royalties and other fees it agreed to pay under Franchise Agreements.

Although BrightStar Care advised Foreside that doing this would breach its post-expiration covenants—including its covenants not to compete or solicit BrightStar Care® clients and not to use BrightStar Care® vendors, suppliers, or referral sources—Foreside commenced operating its competitive business, serving the same customers it served (and in many cases received from BrightStar Care) as soon as the Franchise Agreements expired.

On July 28, 2025, BrightStar Care filed this lawsuit, seeking to enjoin Foreside's wrongful competition and solicitation and continued wrongful use of BrightStar Care® vendors, suppliers, and referral sources. Shortly afterwards, on August 4, 2025, BrightStar Care filed a Motion for Preliminary Injunction [Doc. # 13]. In addition to seeking to enjoin Defendants from violating their non-compete and non-solicitation obligations, the Proposed Preliminary Injunction Order submitted to Chambers specifically asked this Court, in accordance with the

---

[3] The Franchise Agreements had ten-year terms, calculated from opening. (Franchise Agreements § 2.)

Franchise Agreements' terms, to enjoin Foreside and the other defendants from "directly or indirectly, for themselves, or through, on behalf of, or in conjunction with any person or entity, soliciting business from customers of Defendants' former BrightStar Care® Agencies *or from any of BrightStar's referral sources (including without limitation National Accounts), or contacting any of BrightStar's suppliers or vendors* for any competitive business purpose." (Emphasis added.) The parties subsequently entered into an agreed briefing schedule, and on August 14, 2025, this Court entered a minute order adopting that schedule. (Doc. # 21.)

      **C.**      <u>**Foreside Violates Its Obligations to Arbitrate**</u>

Notwithstanding (i) the parties' multiple agreements to arbitrate most claims, including damage claims, and (ii) the fact that enforceability of the parties' post-expiration rights and obligations is currently before this Court, on or about August 20, 2025, Foreside filed a new lawsuit in the Superior Court of the State of California for the County of Orange—entitled *Foreside Management Company v. BrightStar Franchising, LLC and MyOutDesk, LLC, et al.*, Case No. 30-2025-01504948-CU-BC-NJC (the "California Lawsuit")—that effectively asks the California court to annul some of the same post-termination obligations BrightStar Care had already asked this Court to enforce. (A true and correct copy of the Complaint in the California Lawsuit [the "California Complaint"] is attached hereto as Exhibit 5.)[4] Specifically, even though Foreside is contractually prohibited from working with BrightStar Care's vendors and National Accounts, the California Lawsuit alleges that BrightStar Care is somehow "tortiously interfering" with Foreside's relationships with these entities and asks the California court

---

[4]    By filing the California Lawsuit, Foreside also improperly ignored the Franchise Agreements' Illinois venue provision.

4

(initially on one-day's notice) to enjoin BrightStar Care from taking any steps to interfere with Foreside's alleged "right" to work with these vendors and National Accounts.[5]

In addition, the California Complaint expressly includes claims and seeks relief that must be heard in arbitration pursuant to Section 15.3 of the Franchise Agreements. For example, the California Complaint's Prayer for Relief seeks, among other things:

- Compensatory damages in an amount according to proof;
- incidental and consequential damages in an amount according to proof;
- punitive damages; and
- interest.[6]

(California Complaint, Exhibit 5.)

## II. ARGUMENT

The FAA's primary purpose is to ensure "that private agreements to arbitrate are enforced according to their terms." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford, Jr. Univ.*, 489 U.S. 468, 479 (1989); *accord Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 n.34 (1983) (the FAA expresses Congress's intent "to mandate enforcement of all covered arbitration agreements").

One of the primary vehicles for enforcing arbitration agreements is Section 4 of the FAA. That section provides that:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration

---

[5] The same law firm representing Defendants here filed the California Lawsuit. However, counsel did not disclose this lawsuit's existence, let alone the issues before this Court, to the California court.

[6] Notably, the Franchise Agreements also forbid some of these types of damages, as well as the jury claim included on the face of the California Complaint. (*See* Franchise Agreements §§ 15.3, 15.10, and 15.11.)

> proceed in the manner provided for in such agreement. … The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

9 U.S.C. § 4. Underlying this provision is the settled principle that, "[i]f parties contract to resolve their disputes in arbitration rather than in the courts, a party may not renege on that contract absent the most extreme circumstances." *Stout v. J.D. Byrider*, 228 F.3d 709, 715 (6th Cir. 2000).

A motion to compel arbitration requires this Court to determine: (1) whether there is a valid agreement to arbitrate, and (2) if the dispute falls within the scope of the arbitration agreement. *See, e.g., Elzinga & Volkers, Inc. v. LSSC Corp. and Leggett & Platt, Inc.*, 838 F. Supp. 1306, 1309 (N.D. Ind. 1993); *We Care Hair Dev., Inc. v. Engen*, 180 F.3d 838, 844 (7th Cir. 1999). If both questions are answered "yes," a court is required to enforce the arbitration agreement in accordance with its terms. *See Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.") (citing 9 U.S.C. §§ 3, 4.). Both factors are met in this case.

First, there is no question that Foreside agreed to arbitrate some of the disputes that it included in the California Complaint. As noted above, the Franchise Agreements all contain arbitration agreements which provide, in pertinent part, that "any dispute between Franchisee and Franchisor . . . arising under, out of, in connection with or in relation to [the Franchise Agreements], the parties' relationship, or Franchisee's Agenc[ies] must be submitted to binding arbitration." These arbitration agreements are valid, have not been revoked, and are enforceable

upon such grounds as exist at law or in equity. As a result, the first prong of the two-part test is satisfied.

The second part is likewise satisfied. Aside from the request for injunctive relief, the claims and requests for relief in the California Complaint are easily encompassed by the parties' broad arbitration agreements, as they all arise out of or relate to the Franchise Agreements and the parties' relationship. That is because they all allege tortious behavior relating to Foreside's continued relationships with BrightStar Care's vendors and National Accounts, which Foreside (i) commenced when it was a BrightStar Care franchisee based on master service agreements BrightStar Care had with those vendors for the benefit of its franchisees, including Foreside, and (ii) was supposed to terminate when its Franchise Agreements terminated or expired.[7] Accordingly, the FAA "mandates" that Foreside submit these claims to binding arbitration.[8]

## III. CONCLUSION

For all the foregoing reasons, BrightStar Care respectfully requests that this Court enter an order compelling Foreside to submit its arbitrable claims in the California Lawsuit in arbitration in accordance with Section 15.3 of the Franchise Agreements if it wishes to pursue them.

---

[7] *See Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 758 (11th Cir. 1993) (finding that arbitration clause that governed claims "arising out of or relating to" the contract was sufficiently broad to cover related tort claims).

[8] Section 15.4 permits parties to litigate – albeit in an Illinois court – claims for injunctive relief. BrightStar Care therefore does not seek to compel Foreside to arbitrate those claims. If, however, there is a dispute regarding the scope of what must be arbitrated and what may be litigated, those questions must be resolved by an arbitrator, as the arbitration agreements provide that arbitration is to proceed according to the AAA rules. And as every Circuit Court to address the issue has held, such a reference delegates all such questions to an arbitrator to decide. *See, e.g., Tel. Invs. USA, Inc. v. Lumen Techs., Inc.*, No. 22-CV-2260, 2022 WL 2828751, at *4 (N.D. Ill. July 20, 2022) (Rowland, J.) ("[A]lthough the Seventh Circuit has not addressed this issue, the consensus view among district courts in this circuit and among the other appellate circuits holds that reference to or incorporation of AAA rules constitutes clear and unmistakable evidence to delegate arbitrability to an arbitrator").

Date: August 26, 2025　　　　　　　　　　Respectfully submitted,

**BRIGHTSTAR FRANCHISING, LLC**

By: */s/ Norman M. Leon*

One of its attorneys

Norman M. Leon (#6239480)
**DLA PIPER LLP (US)**
444 West Lake Street, Suite 900
Chicago, Illinois 60606
Phone:  (312) 368-4000
Facsimile:  (312) 236-7516
Norman.leon@us.dlapiper.com

8

**CERTIFICATE OF SERVICE**

I, Norman M. Leon, do hereby certify that, on this 26th day of August 2025, I electronically filed a copy of **PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL ARBITRATION** using the ECF System for the United States District Court for the Northern District of Illinois. Notice of this filing was served to all counsel of record registered on the ECF system.

*/s/ Norman M. Leon*
Norman M. Leon